## VIOLATION OF CITY ORDINANCE IN PERMITTING SIDEWALK TO BECOME COVERED WITH ICE.

Court of Appeals for Cuyahoga County.

AGNES FAGINS v. BLOCH REALTY COMPANY.

Decided, February 7, 1916.

*Negligence—Of Pedestrian in Walking over Sidewalk Known to be Covered with Ice—Abutting Property Owner Not Deprived of the Defense of Contributory Negligence—By His Violation of a City Ordinance in Permitting the Ice to Accumulate.*

An inference of wantonness or willful negligence on the part of an abutting property owner, in permitting the sidewalk in front of his premises to become covered with ice in violation of a municipal ordinance, can not be imputed and his defense of contributory negligence be thereby cut off in an action brought by one who went upon the walk, knowing its dangerous condition, and fell and was injured in so doing. Failure to obey the ordinance and permitting the ice to accumulate were co-incident but not different things and do not introduce the rule of willfulness.

*A. H. Martin,* for plaintiff in error.
*Ford, Snyder & Tilden,* contra.

GRANT, J.

In this proceeding we are asked to reverse the judgment of the court of common pleas, following a verdict directed by the court, upon the conclusion of the plaintiff's testimony.

As being substantially correct, we adopt as our own the statement of the plaintiff's brief as to the issues joined by the pleadings in the case as follows:

"Agnes Fagins, as plaintiff in the common pleas court, brought her action against the Bloch Realty Company, as defendant, and charged in her petition that the said defendant, being the owner and in possession of a certain tall brick building abutting on Walnut avenue, Cleveland, O., on January 26, 1915, had constructed and maintained a certain down spout on

said building which was inadequate to and which failed to
properly conduct the water from the roof of said building to
the sewer, but permitted the water accumulating on said roof
to overflow and flow down the outside of said down spout and
to be discharged on the surface of the sidewalk on Walnut
avenue and to flow across the sidewalk eastwardly therefrom to
the gutter, and so flowing to freeze and form an accumulation
of ice in ridges on said sidewalk—causing the same to be dan-
gerously obstructed, all in negligent, wanton disregard of the
laws and ordinances of said city.   That on said date she, the
plaintiff, while lawfully proceeding along said sidewalk as a
pedestrian, in the exercise of due care, slipped and fell on said
sidewalk, because of said icy obstruction and defect and suffered
serious permanent injury to her right knee rendering her a per-
manent cripple.   And charged that the defendant thereby had
wantonly, negligently and in violation of the laws and ordi-
nances of the city, inflicted said injuries upon her to her damage,
and prayed judgment accordingly.''

The defendant in its brief says that the plaintiff's statement
of the facts which the testimony offered at the trial tended to
prove, is also correct in substance; wherefore we adopt that
also as ours, as follows:

''On January 26, 1915, at about 11:30 A. M., Agnes Fagins,
plaintiff in error, a woman in her 57th year of age, was walking
westward on the sidewalk on the north side of Walnut avenue,
Cleveland, Ohio, 'as carefully as she could' in the business of
collecting washings—she being a washerwoman—on her way to
the Hanna Flats.   Water accumulating on the roof of the Hanna
Flats had backed up, the down spout being clogged and over-
flowed and instead of being conducted down the inner side of
the down spout to the sewer, ran down the outside of the
easterly down spout and was discharged upon the surface of
the sidewalk and ran across the sidewalk to the street.   In so
doing it froze on the down spout and upon the sidewalk from
time to time and caused an accumulation of ice, forming in
ridges and unevenly across the sidewalk, being almost a foot
thick or high at the side of the building at the end of the down
spout and ranging from that thickness to three or four inches
thick at the curb and extending entirely across the sidewalk
from the building to the curb, and extending of the same width,
eastwardly toward E. Twelfth street, from the down spout about

eight or twelve feet. The sidewalk from the building and down spout to the curb is about ten feet wide. A pedestrian, in order to avoid the ice, passing along said sidewalk going to said Hanna Flats would have to leave the sidewalk at a certain drive about twelve feet east of the down spout on the southeastwardly end of said flats and pass into the street outside of the curb and travel about eighteen feet before returning to the sidewalk to enter the building. This accumulation of ice which made the sidewalk unsafe and dangerous was permitted to remain for about five days after the attention of the defendant's manager was called to it and before plaintiff was injured ·by falling thereon.

"The attention of the defendant's manager was called to this accumulation of ice which made ·the sidewalk unsafe and dangerous about five days immediately prior to the day of the plaintiff's injury, but nothing was done to remedy said condition.

"When within a very short distance—'four or five steps'— or about 'three feet' of the Hanna Flats, the plaintiff slipped and fell on the accumulation of ice. She had gathered washings from the 'Hanna' for several years. She had passed over this sidewalk on the day before (Monday) several times. At the time of her injury observing the icy, uneven, rough, slippery condition of the sidewalk, she walked as best she could, being compelled to go after her work and being unable to stop. On Tuesday, the day of her fall, it was a little warmer than it had been, causing some thawing and a larger flow of water than on the preceding days. There was no other equally direct and convenient way to her destination open to plaintiff. She sustained, as a result of the fall, a very painful injury to her right knee and foot, rendering her prostrate, helpless and unable to walk. Also a painful, persistent swelling and inflammation and a fluid effusion in the bursa about the knee joint. A severe sprain and a tearing of the ligaments about the knee joint, a displacement of the two cartileges of the knee and a latent, quiescent, congenital, syphilitic taint in the blood was revived and rendered active and a necrosis of the head of the tibia ensued—rendering said plaintiff a helpless cripple, permanently incapacitated from using her right leg and from following her usual vocation.

"The defendant, the Block Realty Company, owned and was in possession and control of the building, the Hanna Flats, and maintained the down spout from which the water came, which frozen caused the said icy condition on the sidewalk on which plaintiff fell.

"Sections 670 and 241 of the building code of Cleveland, make it a misdemeanor, punishable by a fine and imprisonment to, in any case, permit the discharge of water from the roof of a building upon and across the sidewalk."

The judgment complained of was entered after a motion by the plaintiff for a new trial had been made and overruled.

A single question, therefore, arises upon this record for our determination—having a proper regard for all that the testimony relevantly tends to prove, when brought to bear upon the issue joined, and allowing for all proper inferences to be deduced from it, still was there anything fit to go to the jury in support of a verdict for the plaintiff? Whatever the trial judge may have remarked as to the controlling state of the law in Ohio upon which he took the case from the jury, the justification for doing so is to be found, if at all, in the admitted facts that the plaintiff came to her injuries from going into a place of danger plainly visible to her at the moment and which she might without difficulty have avoided. And this is no more than saying that her hurts were brought upon herself as the result of her own negligence causing or materially contributing to them.

And, if such is the rule, we think she fairly brought herself within its application, concretely, to her case. She testified that the icy condition of the sidewalk was plainly to be seen when she went upon it and was injured, and that it was so to her knowledge the day before, when also she had occasion to pass that way several times.

Such being the admitted fact, the case seems to be governed by *Schaefler* v. *Sandusky,* 33 Ohio St., 246, of which the syllabus is as follows:

"A person who voluntarily attempts to pass over a sidewalk of a city, which he knows to be dangerous by reason of ice upon it, which he might easily avoid, can not be regarded as exercising ordinary prudence, and, therefore, can not maintain an action against the city to recover for injuries sustained by falling upon the ice, even if the city would otherwise have been liable."

There is nothing more in the facts in the case at bar that should have sent it to the jury than there was in the one just

cited. In that case the controlling facts were disclosed by the answers of the jury to certain special interrogatories sent to them, as follows:

"Q. Did plaintiff see and know the nature and character of this obstruction before and at the time of passing over it? And did he, knowing this, voluntarily pass over it? A. He did.

"Q. Could he have easily avoided it, either on the same walk, in the street, or on the opposite side, or on any other sidewalk, and reach his destination? A. He could have avoided it."

On these findings the court in that case rendered judgment for the defendant, although the general verdict was for the plaintiff. And the Supreme Court upheld the judgment.

Here, the same facts were established by the admissions of the plaintiff, a result certainly not less satisfactory than the findings of a jury.

The rule stated has been followed by the Supreme Court in *Conneaut* v. *Naef*, 54 Ohio St., 529, and in *Norwalk* v. *Tuttle*, 73 Ohio St., 242, as well as in numerous affirmed circuit court cases. It must, therefore, be regarded as the settled law of the state in this respect, conclusive in the case before us, and properly applied by the trial court.

In the case at bar the negligence of the plaintiff, contributing to her injury, was so far the efficient cause of that injury that but for it she would not have been injured, and by the exercise of ordinary care for her own safety she could have avoided the injurious consequences of the initial negligence of the defendant company. See remarks of Williams, J., in *Schweinfurth* v. *Railway*, 60 Ohio St., 215, at p. 222, quoting with approval *Thompson on Negligence* to the effect we have just stated.

It is, however, claimed by the plaintiff that the doctrine has no application where the circumstances are such that a jury might find from them that the conduct of the defendant in permitting the sidewalk to become covered with ice contrary to law should raise an inference of wantonness or wilfulness and bring that as a dominating issue of fact into the controversy. The

contention at this point is that the unlawful negligence of the defendant amounted to a reckless disregard of the plaintiff's right to a safe passage over the sidewalk, which made wilfulness the controlling ingredient of legal wrong and took the ordinary doctrine of contributory negligence as a decisive factor out of the case. Such is the argument, which is fortified by extensive citations of authorities.

This doctrine is shortly but completely stated in 7 Am. & Eng. Enc. Law, 443 (2d Ed.), thus:

"The doctrine of contributory negligence has no application in cases where the injury is inflicted by the wilful act or omission of the defendant; in such cases contributory negligence is not a defense and, in its legal sense, can not exist.
"Wilfulness and negligence are the opposites of each other, the one signifying the presence of intention or purpose, the other its absence."

And in *1 Sherman & Redfield, Negligence*, 64, it is said:

"It is universally conceded that the greatest contributory fault, including a wilful trespass, is no defense in an action for wilful injury."

And it is contended that when the efficient cause of the injury —in this case an ice covered sidewalk—is brought about by the disobedience of an ordinance on the part of the defendant, wilfulness is thence to be imputed to it as a matter of law, conclusively, to the effect of cutting off the defense it might otherwise have of contributory negligence on the plaintiff's part. At least, it is said, it was a question for the jury. An examination of the authorities brought forward to support this contention, leads us to the conclusion that the doctrine, applied to the case in hand, is unsound. The rule seems to be limited to cases where the initial fault of placing himself in a place of peril was that of the plaintiff, and where the resulting injury arose from the defendant's reckless and wanton act or omission— amounting in law to wilfulness—then first coming into the situation and bringing about the hurts complained of. Here, the

failure to obey the ordinance did not come into the case as the direct cause of the injury, as an intervening agency primarily responsible for it; it was there in the first instance as a usual and ordinary manifestation of negligence, and the fact that it at the same time was a violation of an ordinance was a coindence and not an independent basis of recovery. Because the omission to obey the ordinance and the permitting of ice to accumulate in the first place were coincident but not different things, does not, as we think, introduce the rule of wilfulness in the case. The line of distinction seems nebulous at first glance, but it exists and is perceivable from an analysis of the cases cited in the briefs.

Upon the plaintiff's testimony we think there was nothing to go to the jury and that the verdict was properly directed.

No error having intervened, the judgment complained of is affirmed.

MEALS, J., and CARPENTER, J., concur.